**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DIANE W. ROUSE,**

**Plaintiff,**

**v.**                                                                  **Case No.  8:07-CV-1601-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

**Defendant.**

_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title

42, United States Code, Sections 405(g), to obtain judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her claim for period of disability and

Disability Insurance Benefits ("DIB").[1] The undersigned has reviewed the record, including a

transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the

complete administrative record, and the pleadings and memoranda submitted by the parties in this

case.

In an action for judicial review, the reviewing court must affirm the decision of the

Commissioner if it is supported by substantial evidence in the record as a whole and comports with

applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States
Magistrate Judge (Dkt.11).

Commissioner's findings, the Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 589 (11th Cir.1987).

## I.

Plaintiff filed for DIB on January 11, 2005, alleging disability beginning September 1, 2003.[3] (T 40-46) Plaintiff claims she is disabled due to arthritis in her back and hips, a history of breast cancer, and asthma. (T 57) The ALJ held a hearing on Plaintiff's application for DIB on June 29, 2006. (T 225-49) Fifty-five (55) years old at the time of the hearing, Plaintiff has a high school education and studied commercial art and graphic design at a "tech school." (T 229-30) She has work experience as a laborer, receptionist, and inventory clerk. (T 58, 70-73, 228)

In his January 9, 2007 decision,[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. (T 19) The ALJ determined that, although

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[3] The ALJ's decision erroneously notes that Plaintiff filed her application on January 6, 2005. (T 15) However, this error is not material to the deposition of the case and appears to be a typographical error.

[4] The ALJ's decision is incorrectly dated January 9, 2006. (T 6, 19) Plaintiff notes that the date of the ALJ's opinion is misstated (Dkt. 13 at 18).

Plaintiff's asthma, low back and neck pain were "severe" under 20 CFR § 404.1520(c), these impairments, whether considered singly or in combination, did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (T 15-19)

Further, the ALJ found that Plaintiff's allegations regarding the severity of her impairments were not entirely credible. (T 18) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC")  for "wide ranges of light and sedentary work,"[5] albeit limited by the need to avoid "concentrated exposure to temperature extremes, dusts, odors, fumes, gases, and hazards." (T 18-19) The ALJ relied on the findings of a vocational expert ("VE") who answered hypothetical questions based on these limitations and concluded that Plaintiff's severe impairments did not prevent her from performing her past relevant work. (T 18, 243-45) A State Agency physician ("SAP") also evaluated the medical record, concurring with the VE but adding that Plaintiff must avoid "concentrated exposure to temperatures and hazards." (T 17) Accordingly, the ALJ found that Plaintiff was not totally disabled because she could perform a significant number of jobs in the national economy. (T 18)

On May 25, 2007, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 6) Plaintiff filed a timely petition for judicial review and has

---

[5] "Light work" requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing, or when it involves sitting most of the time[,] ... some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567(b).

"Sedentary work" as defined at 20 C.F.R. §§ 404.1567(a) involves the "lifting [of] no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

exhausted all administrative remedies. Therefore, the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff raises two issues on appeal: (1) whether the ALJ's finding that Plaintiff was capable of performing her past work was based on substantial evidence; and (2) whether the Appeals Council committed error in finding that new evidence submitted by Plaintiff did not provide a basis for reversing the ALJ's decision (Dkt. 13 at 4).

**A.** Plaintiff argues that the ALJ's finding that Plaintiff was capable of performing her past work was not based on substantial evidence because the ALJ failed to consider whether Plaintiff's nebulizer[6] treatments precluded her from performing her past work as a receptionist (Id.) She bases this claim in part on the testimony of the VE, who opined in a hypothetical that Plaintiff's use of a nebulizer "during four breaks per day lasting 20 minutes at a time" would preclude her from performing her past work. (T 245)

An ALJ's questions to a VE must comprehensively describe Plaintiff's impairments. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ is required to include only those restrictions the ALJ finds supported by the evidence in hypothetical questions to the VE.  See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

---

[6] A nebulizer is "[a] device used to reduce liquid medication to extremely fine cloudlike particles" and is "useful in delivering medication to deeper parts of the respiratory tract." Stedman's Medical Dictionary 1177 (Marjory Spraycar, ed., 26th ed. 2000).

The ALJ posed the following hypothetical to the VE based on an RFC assessment completed

by consultative physician Lawrence Gustin, M.D. ("Dr. Gustin") (T 198-205):

ALJ:         All right. I'm going to ask you a hypothetical, to assume a person
             who has the physical ability to do light work as set forth in Exhibit 5-
             F [Dr. Gustin's RFC assessment], that is lift 20 pounds occasionally,
             10 pounds frequently, lift and carry; stand and walk six hours; sit six
             hours in an eight hour day. Only occasionally climb, balance, stoop,
             kneel, crouch and crawl and avoid concentrated exposure to extreme
             heat and cold, fumes, odors, gas, and machinery hazards. Could such
             a person do any of the claimant's past work?

VE:          Yes, sir. The inventory clerk and the receptionist would typically fit
             that hypothetical. Considering claimant's testimony, it would not, but
             the DOT would say yes, that it would.

(T 242) Plaintiff's attorney then posed a separate hypothetical based on a July 2006 pulmonary RFC

questionnaire completed by Plaintiff's treating physician, Brunilda Nazario, M.D. ("Dr. Nazario")

(T 211-16), who opined that Plaintiff was incapable of performing even low stress jobs:

ATTY:        . . . I'd just like to pose one hypothetical based on Exhibit 7-F [Dr.
             Nazario's RFC assessment]. Do I need to go through each one or
             should I classify the –

ALJ:         I'm interested in how you're going to deal with Exhibit 7-F, so go
             ahead, yes.

ATTY:        Okay. . . . Assume again, the same individual with the same age,
             educational background, past relevant work history as the claimant
             and is, according to Dr. Nazario, unable to sit, cannot walk any
             blocks, cannot stand, can sit, stand, walk less than two hours out of
             an eight hour work day. Would need to talk unscheduled breaks
             during an eight hour day every 30 minutes where she must sit or
             recline, actually sit, only for 15 minutes before returning to work.
             Never able to lift less than 10 pounds, apparently no lifting. Never
             able to twist, stoop, bend, crouch, climb ladders or stairs, would need
             to avoid all exposure to extreme cold, extreme heat, high humidity,
             fumes, odors, dust, gases, perfumes, cigarette smoke, soldering,
             fluxes, solvents, cleaners, chemicals and would be absent from work
             more than four days per month. Would that hypothetical person be

5

able to perform any of the claimant's past relevant work or other work?

VE:        No.

(T 243-44)

However, when Plaintiff's attorney attempted to add further limitations to the hypothetical, there was confusion as to which hypothetical Plaintiff's attorney was modifying:

ALJ:        You've added those limitations to what?

ATTY:        To the initial –

ALJ:        To the question I asked?

ATTY:        The very first hypothetical that you had asked at both the light and sedentary level. And then I just have one other question. . . . In terms of the first hypothetical, again, at either the light or sedentary level, if that hypothetical person would be required to take four breaks per day lasting 20 minutes at a time in order to use their nebulizer, would that have any effect on their ability to perform past relevant work or other work?

VE:        It would . . . preclude the jobs if, on a consistent day to day basis.

ATTY:        That's all I have.

ALJ:        All right. Now you based your hypothetical on 7-F [Dr. Nazario's RFC assessment].

ATTY:        Yes.

(T 244-45)  Although the record suggests that Plaintiff's attorney intended to apply the nebulizer limitation to the first hypothetical (based on Dr. Gustin's RFC assessment), counsel later confirmed that the limitation was to be applied to the second (based on Dr. Nazario's RFC assessment). (T 242-45) The resulting confusion renders it impossible for this Court to determine whether there is substantial evidence to support the ALJ's finding that Plaintiff is able to perform work activity

despite her impairments. See Williams v. Barnhart, 424 F.Supp.2d 796, 804 (E.D. Pa. 2006) ("[g]iven the uncertainty created by the ALJ's hypothetical[,] . . . the VE's testimony does not constitute substantial evidence").  A remand for clarification is therefore required.

The demands of Plaintiff's nebulizer treatments also require clarification.  Plaintiff testified that she used the nebulizer "probably . . . four times a day" for "about 20 minutes." (T 238) However, in his decision, the ALJ neither expressly considered the effects of Plaintiff's nebulizer use on her ability to work nor stated whether he credited Plaintiff's testimony on the topic. (T 17-18) In fact, the ALJ's decision does not mention Plaintiff's nebulizer use.

Thus, on remand the ALJ should also address and make findings as to Plaintiff's use of her nebulizer:  (1) frequency of use (not simply the upper bound of four times per day), (2) necessity of use, and (3) any other restrictions on her use of the nebulizer.  See, e.g., Klitz v. Barnhart, 180 Fed. Appx. 808, 810 (10th Cir. 2006) (remanding to ALJ to develop certain facts regarding Plaintiff's nebulizer use).

Plaintiff also claims that the ALJ's decision was not based on substantial evidence because it is unclear whether the ALJ considered a cervical MRI conducted on June 2, 2006 (Dkt. 13 at 18). Plaintiff notes that Dr. Gustin's July 2005 RFC determination – which was made nearly a year prior to the MRI – could not have taken the MRI into account (Id.). According to Plaintiff, the "severe cervical radiculopathy" revealed by the MRI renders her totally and permanently disabled (Id.; T 18).

This argument is unpersuasive. Plaintiff admits in her own memorandum that the ALJ considered evidence that included statements from Dr. Nazario regarding Plaintiff's cervical radiculopathy, stating, "the evidence presented to the ALJ at the Hearing included a statement from

Dr. Nazario, the treating physician, that [Plaintiff] had severe cervical radiculopathy . . . [but] the ALJ stated in his Decision that he gave Dr. Nazario's statements no probative weight since they were inconsistent with the weight of the medical evidence" (Dkt. 13 at 18). The June 2006 MRI was ordered by Dr. Nazario and presumably informed her RFC assessment, which she completed just one month later. However, the ALJ rejected Dr. Nazario's statements as inconsistent with the medical evidence, stating:

| | |
|---|---|
| ALJ: | . . . I must tell you that unless you can back [Dr. Nazario's opinion] up with some explanation, I will have difficulty giving it weight because in, well, for openers, in item number 14, "How many city blocks can your patient walk? None" and "How many hours or minutes can your patient sit at any one time? Zero." "How many hours or minutes can she stand? Zero." Which is interesting because if she's not sitting or she's not standing, she must be lying down. Which would mean that if this were to be found credible by me, I would have to believe that she didn't get out of bed – |
| ATTY: | Yes. |
| ALJ: | All day long. And then I turn the page and it says, "Does she need to take breaks during [an] eight hour day? Yes." And "Must she sit or recline on an unscheduled break? She must sit." "How long? Fifteen minutes." Now, I don't know whether you can interpret that in a way that makes some kind of logical sense, but I can't. And I invite you to ask the doctor to explain how it is that her patient can sit zero, stand zero, and take a 15 minute break sitting down. I don't find it credible. |
| ATTY: | Yeah, I can, I can understand that. |
| ALJ: | And I'm telling you that now. I am not finding it credible. It's inconsistent within itself. It's inconsistent with the claimant's testimony. Claimant's been sitting now for 45 minutes. Surely, that's greater than zero by any stretch of the imagination. |

(T 245-46) Although the record was left open for Plaintiff to clarify Dr. Nazario's inconsistent statements, Plaintiff did not do so. (T 112)

> Further, the MRI findings are not abnormal. The specific findings were as follows:

> No abnormal bone marrow signal is identified. Specifically, I do not see evidence of bone marrow edema within the dens to suggest a fracture. No loss in vertebral body height is found. The cervicomedullary junction appears within normal limits. The spinal cord does not appear atrophic nor expanded . . . No focal disc protrusion is identified. No spinal stenosis is found.

(T 222)

Plaintiff also notes that, although the ALJ rejected the opinion of Dr. Nazario that Plaintiff was "unable to lift any weight or sit or stand at all," the March 2003 CT chest scans confirmed that her lungs were deteriorating. (Dkt. 13 at 17).  However,  the CT scan merely found probable post-inflammatory scarring and ruled out any left lung nodule suspected on a chest X-ray – conditions that do not undermine the ALJ's determination that Dr. Nazario's opinion was inconsistent within itself and with Plaintiff's testimony. (T 18, 162-63)  Thus, the ALJ's rejection of Dr. Nazario's opinions regarding Plaintiff's cervical impairment was proper.

**B.** Plaintiff further contends that the Appeals Council committed error in finding that new evidence submitted by Plaintiff did not provide a basis for reversing the ALJ's decision (Dkt. 13 at 19). Specifically, she claims that this new evidence (medical records from JSA Healthcare dated May 30, 2006, through October 3, 2006) "provides objective medical evidence of cervical radiculopathy due to a protruding cervical disc . . . [and] may have changed the outcome of the Commissioner's decision" (Dkt. 13 at 20).  The Appeals Council considered the evidence and denied review. (T 6)

The Court has two possible methods of review under Section 405(g), which allows a district court to remand a DIB application to the Commissioner: the "sentence four" and "sentence six"

methods. See 42 U.S.C. § 405(g).[7] Under the "sentence four" method, the Court reviews whether

the Appeals Council's decision to deny benefits is supported by substantial evidence in the record

as a whole, including any new evidence. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269

(11th Cir. 2007). Conversely, the "[s]entence six [method] allows the district court to remand to the

Commissioner to consider previously unavailable evidence." Id.  However, it does "not grant a

district court the power to remand for reconsideration of evidence previously submitted to the

Appeals Council." Id.

A remand to the Commissioner is proper under sentence six only when new and material

evidence that was not incorporated into the administrative record comes to the district court's

attention. Therefore, the district court does not have the power to remand under sentence six if the

new evidence submitted has been considered by the Appeals Council and is part of the

administrative record. Id.

Here, remand under sentence six is inappropriate because the JSA Healthcare records were

before the Appeals Council. (T 6, 217-24)  However, because Plaintiff argues that the Appeals

Council did not conduct a meaningful review of his case before affirming the ALJ's decision, the

JSA Healthcare records may be the basis for a "sentence four" remand. See Ingram, 496 F.3d at

1269. Under "sentence four", the Court reviews whether the Appeals Council's decision to deny

---

[7] The "fourth sentence" of Section 405(g) gives district courts "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The "sixth sentence" of Section 405(g) gives district courts the ability to remand an application for DIB to the Commissioner of Social Security when there is a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id.

benefits was supported by substantial evidence in the record as a whole – including any new evidence. Id.

The Appeals Council accepted Plaintiff's new evidence but denied review because, even in light of the JSA Healthcare records, the Appeals Council found no error in the ALJ's opinion. (T 6)  The JSA Healthcare records are consistent with prior medical evidence considered by the ALJ; further, as mentioned above, the June 2, 2006 MRI submitted as "new" evidence was actually ordered by Dr. Nazario, whose opinion the ALJ properly rejected. (T 222)  The ALJ already considered Plaintiff's cervical radiculopathy at the administrative hearing and the JSA Healthcare records do not indicate a worsening of that condition. (T 222)  The June 2, 2006 MRI found no abnormal bone marrow signals, no evidence of bone marrow edema, no atrophy of the spinal cord, etc. (T 222) Accordingly, the Court finds that the Appeals Council's consideration of the JSA Healthcare records, and its decision to affirm the ALJ's decision in spite of the records, does not render the denial of benefits erroneous.

**III.**

In conclusion, further fact-finding as to Plaintiff's first argument is necessary.  In reaching this conclusion, however, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party shall have the opportunity to submit additional evidence.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     the decision of the Commissioner is **REVERSED** and this case is **REMANDED**
        for further administrative proceedings consistent with the foregoing; and

(2)      the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42

U.S.C. § 405(g) as this is a "sentence four remand" and close the file.  Shalala v.

Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80

(11th Cir. 1993).  The final judgment shall state that if Plaintiff ultimately prevails

in this case upon remand to the Social Security Administration, any motion for

attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of

the Commissioner's final decision to award benefits.  See Bergen v. Comm'r of Soc.

Sec., 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006).

**DONE** and **ORDERED** in Tampa, Florida on this 7th day of August, 2008.


_____
ELIZABETH A JENKINS
United States Magistrate Judge